UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC.,

                                   Plaintiff,

              -against-

JASAM REALTY CORP., CROTONA PROPERTIES,
INC., SURRE, GOLDBERG & HENRY ASSOCIATES,
INC., JOSE RODRIGUEZ and ALICE RODRIGUEZ,

                               Defendants.

------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 01-8434

(Wexler, J.)

APPEARANCES:

        DLA Piper LLP (US)
        BY: ROBIN C. TARR, ESQ.
        Attorneys for Plaintiff
        1251 Avenue of the Americas
        New York, New York 10020-1104

        NORMAN A. KAPLAN, ESQ.
        Attorney for Defendants
        JASAM REALTY CORP. and
        CROTONA PROPERTIES, INC.
        111 Great Neck Road
        Great Neck, New York 11021

        SARETSKY KATZ DRANOFF & GLASS, LLP
        BY: PATRICK J. DELLAY, ESQ.
        Attorneys for Defendants
        SURRE, GOLDBERG & HENRY ASSOCIATES, INC.
        475 Park Avenue South
        New York, New York 10016

        TUMELTY & SPIER, LLP
        BY: THOMAS P. SPIER, ESQ.
        Attorneys for Defendants
        JOSE RODRIGUEZ and ALICE RODRIGUEZ

1

160 Broadway, Suite 708
New York, New York 10038

WEXLER, District Judge

This is an action brought by Plaintiff, Fidelity and Guaranty Insurance Underwriters, Inc.
("Fidelity" or the "Insurance Company"), seeking to rescind insurance coverage it issued to
Defendant Crotona Properties Inc. ("Crotona"), and to recover expenses incurred as a result of
said coverage. Additionally, Fidelity seeks a declaration that it owes no duty to defend and/or
indemnify Crotona in a personal injury action that is presently pending in New York State Court
(the "State Court Action"). The State Court Action was commenced on July 5, 2000, and arises
out of a construction accident involving Defendant Jose Rodriguez. Mr. Rodriguez is joined as a
plaintiff in the State Court Action by his wife, Alice Rodriguez. Both Jose and Alice Rodriguez
are named Defendant here (collectively the "Rodriguez Defendants").

This case has been tried before a jury twice. Both verdicts were reversed, and the case
has been twice remanded by the Second Circuit. Prior to conducting the third trial, the court
requested that the parties submit letters: (1) taking positions on issues raised by the Second
Circuit and (2) responding to certain questions raised by this court that will bear on the conduct
of the next trial. Presently before the court are the parties' submissions. After outlining the
background of the case, and the latest ruling of the Second Circuit, the court will make rulings as
to the issues raised.

## BACKGROUND

I.      Prior Proceedings: First and Second Trials

This lawsuit was commenced in December of 2001, and the complaint was amended in

2

October of 2002. This first jury trial was held in 2003, and resulted in a verdict in favor of Fidelity. That verdict was overturned based upon an ambiguity in the special verdict form regarding the separate identities of Defendants Jasam Realty Corp. ("Jasam") and Crotona. This court corrected the identified ambiguity, and held a second jury trial. That trial, concluded in June of 2006, also resulted in a verdict in favor of Fidelity, and was also appealed by Defendants.

II.    2008 Decision of the Second Circuit Remanding for New Trial

A.    Date Upon Which the Jury Should Have Evaluated Statements

In an opinion dated August 26, 2008, the Second Circuit vacated the second judgment, and remanded the case for a new trial. Fidelity & Guaranty Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133 (2d Cir. 2008) (the "2008 Decision"). The 2008 Decision reversed the verdict on the ground that the jury was permitted to consider incorrect dates when considering whether statements made by Defendants were true.

The veracity of statements made is critical to this case. The jury was asked specific questions as to representations made, and information alleged to have been fraudulently concealed. Those statements and omissions referred to the nature of the business of Jasam and/or Crotona, and the use of the insured property. The decision reversing the trial verdict focused on the date as to when the truthfulness of statements was to be evaluated.

The Second Circuit held that the jury should have been instructed to evaluate the veracity of statements made as of the date "of the making of the insurance contract." Two dates were before the jury. The first date, August 5, 1999, was the date when Defendant Surre Goldberg, ("Surre"), a broker of Fidelity insurance, issued to Jasam a binder of insurance coverage. The binder served as an endorsement to a policy of insurance initially obtained by Jasam in 1997, and

3

amended the policy to include the site of the Rodriguez injury, property owned by Crotona (the "Crotona Property"). The second date before the jury was August 22, 2000. This was the date when Surre asked Fidelity to endorse the Jasam policy as set forth in the August 5, 1999 binder, and to backdate the coverage to that date. Importantly, the August 1999 date precedes the Rodriguez injury and lawsuit, and the August 2000 date follows those events.

Defendants argued that the date upon which the jury was to evaluate the veracity of statements made was August 5, 1999, which was the date of the binder. Fidelity argued that the later date – August 22, 2000, was the date upon which statements were to be evaluated. This court declined to instruct the jury as to the particular date to consider, and it was this instruction that the Second Circuit held to be in error. That court, agreeing with Defendants, held that the date upon which to evaluate the veracity of statements made was August 5, 1999, the date on which Surre issued to Jasam a binder of coverage on the subject property. Moreover, the appellate court held that evaluating the statements as of August 22, 2000, is a finding that would be "impermissible as a matter of law." Thus, the Second Circuit has remanded this case for a new trial so that the jury may be instructed to evaluate the veracity of statements as of August 5, 1999 – an issue as to whether there is an open question of fact.

B.     The Identification of Other Issues and the Parties' Submissions

In addition to remanding for a new trial, the Second Circuit identified, but did not decide, certain other issues. Those issues, and the parties' submissions with respect thereto, are described below.

1.     Does Exercise of the Right of Cancellation
        Preclude Exercise of the Right to Rescind?

The Second Circuit raised the issue of whether, having cancelled the policy at issue as of

April 26, 2001, Fidelity waived the right to rescind the policy, the precise action that it seeks here. This is an important matter since cancellation of the policy cancels coverage going forward, while rescission renders the policy void <u>ab initio</u>. If the decision to cancel waives the right to rescind, Defendants would be entitled to judgment as a matter of law.

The Second Circuit's review of New York law revealed no binding case law on this issue, citing only to a single case from the Appellate Division for the Third Department. <u>See</u> <u>Stein v. Security Mut. Ins. Co.</u>, 832 N.Y.S.2d 679 (3d Dep't 2007). There, the court held that the insurer's decision to cancel a policy was an election of remedies that precluded a later decision to rescind the policy, and render it void <u>ab initio</u>.

The appellate court declined to decide whether Fidelity's exercise of the right to cancel the policy precludes exercise of the right to rescind. That court noted that the re-trial of this matter might result in a verdict in favor of Defendants. Such a verdict would be based upon a jury finding that neither Jasam nor Crotona made any misrepresentations justifying rescission. In that event, there would be no reason to decide the unsettled question of New York law as to whether exercise of a contractual right to cancel a policy is a waiver of any common law right to rescind that policy. The appellate court intimated that if such a question were before that court, it might certify the question for decision by the New York Court of Appeals.

The parties' submissions on this issue take predictable stands. Fidelity argues that it had the right to rescind, while Defendants argue against such a right. The court finds that the submissions do not compel a result in any party's favor at this time. Upon review of the submissions, and in light of the fact that the Second Circuit held that it was more prudent to defer any decision on this issue until after trial, this court will leave the question open pending the jury

decision in the third trial.

2. Estoppel

The Second Circuit also raised, but did not decide, the issue of whether Fidelity's acceptance of premiums should estop it from rescinding the policy. The court noted that under New York law continued acceptance of premiums, after learning of facts that allow for rescission, constitutes an estoppel against the right to rescind the policy. The parties have submitted memoranda citing to facts developed in the first two trials upon which it is argued that estoppel does, or does not, apply. In view of the facts that: (1) there was little developed at trial with regard to when Fidelity may have known of facts that would support exercise of the right to rescind, and (2) Fidelity was not, in any event, given the right to explain any delay in exercise of the right to rescind, this court, like the Second Circuit, declines to resolve the merits of any estoppel argument before the third trial of this matter.

III. Questions Raised by this Court and the Parties' Submissions

A. The Court's Questions

At a conference held after the 2008 Decision, this court asked the parties their positions as to the issues raised by the appellate court as discussed above, as well as certain issues raised by this court. Noting that the Rodriguez Defendants had no real material information to offer regarding the issues raised in this trial, the parties were asked to address whether these Defendants were properly named and entitled to participate fully in the trial of this action. Second, the parties were asked to brief the issue of whether Jasam and/or Crotona were under any obligation to inform Fidelity of a change in use of the Crotona Property. The court was particularly interested in ascertaining whether there was a provision in the relevant policy of

6

insurance that imposed an obligation to inform the Insurance Company of a change in circumstances. In view of the fact that different uses of land may lead to different assessments of risk, the court raised the issue of whether the insureds had any obligation to inform Fidelity of a change in use. Although this issue was not raised at trial, it was the court's feeling that, as a matter of equity, if such a provision existed it should be introduced at the next trial. The court also raised a similar issue with respect to Surre's obligations under the agency agreement with Fidelity.

B.    Rulings as to the Court's Questions

With respect to the Rodriguez Defendants, the court agrees with all parties who have pointed out that these Defendants were properly named so that there could be no question as to the binding nature of any holding herein on them. Accordingly, the court will allow these Defendants to remain in, and participate in this action. The court trusts that these Defendants and, indeed all Defendants keep in mind the importance of avoiding repetition, and concerns as to the time and costs of this third trial.

As to any duty of the insureds to inform Fidelity of a change in use of the Crotona Property, the court notes that no party has pointed to an express contractual provision imposing such an obligation. Instead, Fidelity argues that the failure to disclose any change is a breach of the implied covenant of good faith, present in all contracts. This argument is opposed by the other parties.

The answer to the court's question as to whether or not there existed an express contractual provision requiring the insureds to inform Fidelity of any change in circumstances is clearly, "no." No case cited by Fidelity stands for anything more than what was presented at the

7

first two trials of this matter, i.e., that a clam for rescission can be supported by a showing of either material misrepresention and/or fraudulent concealment. Under these circumstances, the court will present this case to the third jury with the same instructions as agreed to by all parties in the first two trials.

While the court would have considered giving an additional instruction based upon an express contractual provision, it will not do so with respect to any implied contractual provision. This is because the court is not convinced that any such additional instruction is required by law, and because no such instruction was requested in the context of the first two trials. Fidelity relied solely on the argument that material misrepresentations and/or fraudulent omissions were made. No other argument was made, and no other instruction to the jury was requested. In light of these facts, the court will give no further instruction regarding Jasam and/or Crotona's breach of any implied covenant of good faith and fair dealing.

The court rules similarly with respect to any claim regarding additional obligations of Surre. Nothing in the parties' submissions convinces the court to submit the case to the jury any differently with respect to the obligations of Surre than the theory presented in the first two trials. Thus, the court will instruct the jury in the third trial, as agreed to by all parties in the first two trials, that Fidelity claims: (1) breach of the agency agreement requirement to provide reliable underwriting information and (2) negligence.

As to the remaining issues, the court's review of the submissions reveals nothing helpful that would change the way in which the case will be tried. Accordingly, the court will not comment on the submissions, other than to note that they are nothing more than arguments that expose the existence of material facts that will be presented to the jury.

8

## CONCLUSION

For the foregoing reasons, the court rules that the Rodriguez Defendants have been properly named, and will participate in the trial of this matter as set forth above. At the third trial of this matter the court will instruct the jury in accord with the holding of the Second Circuit with respect to the date upon which to evaluate the veracity of statements made. With respect to the duties of Jasam, Crotona and Surre, the court will present the case to the jury on the same legal theories relied upon, and agreed to, by the parties in the first two trials. The court will defer ruling on the legal issues identified by the Second Circuit until after the conclusion of the jury trial. Because it may thereafter be necessary to rule on these issues, the court will allow the introduction of evidence relevant to the making of such determinations.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
March 3, 2009